UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRENCE DARYL GRAY,                     No. 07-10218

        Petitioner,                     District Judge Gerald E. Rosen

v.                                       Magistrate Judge R. Steven Whalen

HUGH WOLFENBARGER,

        Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner Terrence Daryl Gray has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. The matter has been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons that follow, I recommend that the petition be DENIED.

### I.  PROCEDURAL HISTORY

Petitioner was convicted by a jury in the Wayne County Circuit Court, the Honorable Vera Massey Jones, presiding, of armed robbery, M.C.L. § 750.529, felon in possession of a firearm, M.C.L. § 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), M.C.L. § 750.227b. He received a sentence of 15 to 45 years imprisonment on the armed robbery (as a habitual offender), 13 to 90 months on the felon in possession, and a consecutive two years for felony-firearm.

Petitioner took an appeal by right to the Michigan Court of Appeals, raising the

following issues:

> I. Did the trial court commit a fundamental violation of the Fifth, Sixth, and Fourteenth Amendments when it denied Mr. Gray's assertion of his right to testify, which was made after the parties had rested, but before closing arguments were delivered?
>
> II. Was the photographic lineup unduly suggestive, was there no independent basis for the in-court identification, and was Mr. Gray denied due process of law?
>
> III. Where arresting officers did not have probable cause to arrest Mr. Gray, who was merely standing in front of his house, should the use of evidence found on him have been suppressed as fruits of an illegal arrest in violation of his state and federal constitutional rights to be free from unreasonable arrests, searches, and seizures?

On December 20, 2005, the Court of Appeals affirmed Petitioner's conviction in an unpublished *per curiam* opinion. On June 26, 2006, the Michigan Supreme Court denied leave to appeal. Petitioner filed his petition in this Court on January 12, 2007, raising the same issues that were presented to the Michigan Courts.

## II.   FACTUAL BACKGROUND

### Facts Adduced at Trial

The charges against Petitioner arose out of the armed robbery of a Dollar Store at 12700 E. Eight Mile Road in Detroit, Michigan on January 15, 2004. The owner of the store, Michael Berry, testified that at approximately 1:00 p.m. on that date, he was robbed at gunpoint. He described the robber as a black male, between 6'2" and 6'4" tall, weighing about 180 pounds, and wearing a gray hooded sweatshirt and matching pants (Tr. 6-21-04,

163-65). The person wore a mask that covered the tip of the nose to the chin, and Mr. Berry could see from the middle of the forehead to just below the tip of the nose. He testified that the robber had "real angry eyes," and recognized him as having been in the store three or four times previously. *Id*. The robber took $100 from the cash register, and ordered Mr. Berry to go into the office to get more money. Mr. Berry gave him approximately $70 from his desk. The robber put the money in the pouch of his sweatshirt, then hit Mr. Berry with his gun and ran out of the store. *Id.* 166-73.

Mr. Berry testified that the entire incident took about five minutes. He was able to see the robber's face up close for three or four minutes; he said that he was inches away from the robber's face, and the lighting was bright. Mr. Berry said that the shape of the robber's eyes was very distinctive, almost "almond shaped," pointing upward toward his ears. *Id.* 173-75. In court, he identified the Petitioner as the person who robbed him, and identified a photograph of the clothes taken from the Petitioner as "exactly the same" as the clothing worn by the robber. *Id*. 175-76.

Mr. Berry testified that he picked the Petitioner's picture out of a photographic array the day after the robbery, and that he did so based on the unusual eyes. *Id*. 177-82. He later picked the Petitioner out of a live lineup at the County Jail on January 29, 2004, based on his height, broad shoulders, body type, and eyes. *Id.* 184-89. He testified that he was "100 percent certain" that Petitioner was the person who robbed him. *Id*. 190.[1]

---

[1] A pretrial hearing on a defense motion to suppress Mr. Berry's in-court identification, based on claimed improprieties in the pretrial identification procedures, was held on April 30, 2004.

Detroit Police Sergeant Michael Chambers, who arrived on the scene after the robbery, testified that Mr. Berry described the robber as a black male, 18 to 30 years of age, 6'2" to 6'4", approximately 170 to 180 pounds, wearing a gray hooded sweatshirt and gray sweat pants. *Id*. 212.

Detroit Police Officer Ryan May testified that he received a radio run about the robbery, including a description of the suspect and his clothing. *Id*. 219. At about 1:30 or 1:40 p.m., he saw someone fitting that description on an enclosed porch on Alcoy Street, which was about four blocks from the Dollar Store. *Id*. 220, 223-24.

Officer Herman King also received a radio run that included a description of the suspect. *Id*. 237. He saw the Petitioner by the house on Alcoy street, and arrested him, confiscating $167 in small bills taken from Petitioner's clothing. *Id.* 239-42. On cross-examination by Petitioner's counsel, he testified that the Dollar Store was about two or three blocks away from Romel's Party Store. *Id.* 250.

Detroit Police Sergeant Jonathan Parnell was the officer in charge of this case. He stated that the Petitioner was 6' tall, and weighed 170 pounds. Petitioner was wearing a gray hooded sweatshirt and sweat pants. Tr. 6-22-04, 13-14. Sgt. Parnell wanted to conduct a lineup at the precinct station, but could not locate a sufficient number of similar looking individuals. He testified that because of a Department of Justice consent decree, the Detroit Police had to obtain a warrant within 24 to 36 hours of an individuals arrest, so he decided

---

Judge Jones denied the motion to suppress, finding nothing suggestive about either the photographic or the live lineup. Tr. 4-30-04, 74-76.

to conduct a photographic show up at the Dollar Store. *Id*.15-17, 21. At the show up, Mr. Berry examined the photographs carefully, and identified the Petitioner's. According to Sgt. Parnell, Mr. Berry said that he recognized the Petitioner by the "anger in his eyes," adding that Petitioner had been in his store on at least three previous occasions. *Id.* 28-30.

Later, on January 29, 2004, Sgt. Parnell supervised a live lineup at the County Jail. Mr. Berry picked the Petitioner out of the lineup, based on his body size, broad shoulders and eyes. *Id.* 39-41.

After the prosecution rested, the Petitioner called Romel Saroki, the owner of a party store on 8 Mile and Hickory. Mr. Saroki testified that his store was about one block from Alcoy Street. *Id*. 79. He said that the Petitioner was in his store at around 1:00 p.m. on January 15, 2004. *Id*. 79-80. Petitioner was in the store for less than five minutes. *Id*. 85. Mr. Saroki also stated that his store was walking distance to the store that was robbed, about six blocks away. *Id*. 83-84.

Terronnia Sears was the Petitioner's girlfriend. She testified that she lived at 20513 Alcoy, and that Petitioner also lived there, along with her three children, her sister, and her mother. *Id*. 89-90, 94-95. She said that on January 15, 2004, the Petitioner left the house around 1:00 p.m. and returned around 1:10. *Id.* 91-92. She testified that after the Petitioner returned, he never went outside again, but just sat around the house. *Id.* 95. On cross-examination by the prosecutor, Ms. Sears testified that the Petitioner was not at 8174 Traverse Street that day. *Id*. 95-96.

Christopher Weathers testified that on January 15, 2004, he went to the Petitioner's

-5-

house on Alcoy, and they walked to Romel's Market together. *Id*. 98. They then walked back to the Alcoy house and sat on the front porch. *Id.* 100. Mr. Weathers stated that he did not see the Petitioner go inside the house, but rather that he stayed on the enclosed porch. *Id*. 103, 104-105. At some point, the police arrived, pulled Petitioner off the porch, reached into his pocket, and pulled out money. *Id.* 101-102. On cross-examination by the prosecutor, Mr. Weathers stated that the Petitioner was never at 8174 Traverse Street that day. *Id*. 106.

After the defense rested, the prosecutor called the judge's court clerk, Marilyn Craig. Ms. Craig testified that attorney Kim Basen, trial counsel's partner, filed a notice of alibi indicating that Petitioner was at 8174 Traverse on January 15, 2004, except for going to the market between 1:30 and 2:00 p.m. *Id*. 117. Petitioner's counsel waived cross-examination.

Outside the presence of the jury, Petitioner's counsel asked to call Kim Basen. The judge denied the request, citing the conflict of interest in calling counsel's law partner. *Id.* 119. Counsel then asked, "Can we call Mr. Gray to the stand." The prosecutor objected to the proposed sur-rebuttal. Petitioner's counsel made an offer of proof indicating that Ms. Basen mistakenly put the Petitioner's old address in the alibi notice, and that Petitioner would testify as to the last time he lived at that address. *Id*. 119-120. The judge remarked that defense counsel was charged with knowing what was in the court file, particularly as to documents the defense itself filed, and denied the request to call Petitioner, adding, "The case is over with." *Id.* 120. Petitioner's counsel then stated, "If we're not able to do that, that's fine." *Id.*

After slightly more than one hour of deliberations, the jury returned a verdict of guilty

of all charges. *Id*. 181.

## The Court of Appeals Decision

The Michigan Court of Appeals characterized the issue of denial of the Petitioner's right to testify as follows:

> "Gray argues that the trial court violated his constitutional right to testify on his own behalf before closing arguments. Although framed in terms of a denial of his constitutional right to testify, Gray's argument is essentially that the trial court erred in denying his defense counsel's request to call him as a witness to testify on surrebuttal regarding when he last lived at the address listed on the notice of alibi."

The Court of Appeals held that the trial judge did not abuse her discretion in denying the Petitioner's request to testify on surrebuttal, noting that the discrepancy between the notice of alibi and the witnesses' testimony became apparent during the presentation of the Petitioner's case:

> "The record shows that defense counsel knew the discrepancy between the information contained in the alibi notice and the anticipated testimony of the alibi witnesses, and that she knew the prosecution would admit the alibi notice as evidence after Gray's alibi witnesses testified. It is well established that once the defendant presents an alibi defense, the prosecution is permitted to attack the alibi by commenting on the weakness of the alibi testimony. In fact, during cross-examination here, the prosecution questioned two of the alibi witnesses regarding whether Gray had been at 8174 Traverse in the city of Detroit on the day of the incident and had gone to Romel's Market at 13350 Eight Mile Road at approximately 1:00 to 1:10 p.m. Defense counsel, however, did not address the discrepancies on redirect. It was not until the prosecution introduced rebuttal evidence of Gray's alibi notice that defense counsel requested to address the incorrect information in the alibi notice. Because Gray did not avail himself of the opportunity to address these discrepancies and bolster his alibi defense on redirect, we conclude that he was not entitled to present further evidence regarding the matter on surrebuttal and that there was no abuse of discretion."

The Court also held that "the trial court's refusal to permit Gray to present surrebuttal testimony on his residence listed in the alibi notice does not implicate Gray's right to testify." In addition, the Court stated, "Even assuming that the trial court's ruling deprived Gray of his constitutional right to testify, given the overwhelming evidence of Gray's guilt, we find that it was harmless error beyond a reasonable doubt."

### III.   STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this Court's habeas corpus review of state court decisions. Specifically, 28 U.S.C. §2254(d) provides:

> "(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of that claim - -
>
> a.   resulted in a decision that was contrary to, or involved in unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> b.   resulted in a decision that was based on unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

In *Williams* v *Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court held that in order to justify a grant of habeas corpus relief under the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams*, 529 U.S. at 412. Under subsection (d), habeas relief may not be granted unless (1) the state

court decision was contrary to established federal law, or (2) the state court decision involved an unreasonable application of clearly established federal law. *Williams* held that a state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this court has on a set of materially indistinguishable facts." *Id* at 413. *Williams* further held that a state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this court's decisions but unreasonably applies that principle to the facts of a prisoner's case." *Id.* In *Brown v. Payton*, 544 U.S. 133, 141, 125 S.Ct. 1432, 161 L.Ed.2d 334 (2005), the Supreme Court stated that a "state court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner."

### IV.   DISCUSSION

#### A.   Petitioner's Right to Testify

A criminal defendant has a constitutional right to testify in his own behalf. In *Rock v. Arkansas*, 483 U.S. 44, 51-53, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987), the Supreme Court found that such right was grounded in Fifth and Fourteenth Amendment due process, the Compulsory Process Clause of the Sixth Amendment, and the Fifth Amendment proscription against compelled testimony.[2] Nevertheless, that right may be

---

[2] In his reply brief [Doc. #6], Petitioner contends that the trial judge's refusal to allow him to testify also implicated his right to compulsory process, his due process right to present a

subordinated to "other legitimate interests in the criminal trial process." *Id.* at 55-56. However, as explained by the Supreme Court in *Rock*, "restrictions of a defendant's right to testify may not be arbitrary or disproportionate to the purposes they are designed to serve. In applying its evidentiary rules a State must evaluate whether the interests served by a rule justify the limitation imposed on the defendant's constitutional right to testify." *Id*.

In *United States v. Jones*, 880 F.2d 55 (8th Cir. 1989), the defendant claimed error in the trial judge's denial of his request to reopen the proofs so that he could testify. Finding no constitutional error, the Eighth Circuit stated:

> "The rule generally limiting testimony to the evidence-taking stage of trial does not unconstitutionally infringe upon a defendant's right to testify. While placing only a minor limitation on the right, the rule promotes both fairness and order in trials, interests which, of course, are crucial to the legitimacy of the trial process. In the interests of fairness and order, it simply imposes a commonsense requirement that the right to testify be exercised in a timely fashion. And consonant with the Supreme Court's admonition in *Rock,* the rule is not "arbitrary or disproportionate to the purposes [it is] designed to serve." *Rock,* 483 U.S. at 57, 107 S.Ct. at 2712. In contrast to the state law struck down in *Rock,* which left the trial court no discretion to admit a criminal defendant's hypnotically refreshed testimony, under the rule at issue here the district court retains discretion to reopen the evidence to allow the defendant to testify. Without reasonable rules regulating the presentation of evidence and arguments, courts could not effectively function. We find here no

---

defense, and his Sixth Amendment right to the effective assistance of counsel. Those claims were not raised in his petition, and may not be raised for the first time in a reply brief. *See Sundberg v. Keller Ladder*, 189 F.Supp.2d 671 (E.D. Mich. 2002); *Scottsdale Ins. Co. v. Flowers,* 513 F.3d 546, 553 (6th Cir.2008). Moreover, Petitioner did not raise the issues of counsel ineffectiveness or right to present a defense in the Michigan courts, and hence, those claims have not been exhausted for federal habeas review. *See* 28 U.S.C. § 2254(b)(1)(A); *Picard v. Conner*, 404 U.S. 270, 275-78, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). However, to the extent that the right to compulsory process in part forms the basis of the right to testify in one's own behalf, *Rock, supra*, that issue is preserved.

constitutional infirmity" *Id*. at 59-60 (footnotes omitted).

In the present case, the Court of Appeals framed Petitioner's request to testify as a request for surrebuttal, and given that the offer of proof revealed that the proposed testimony was in direct response to the prosecutor's rebuttal witness, that was a fair characterization. However, regardless of whether viewed as a request for surrebuttal or a request to reopen the proofs, the Court of Appeals properly found that the trial judge acted within her discretion in denying the motion. The defense had rested and the prosecutor had put on a rebuttal witness.³ The proofs were closed. Moreover, as the Court of Appeals observed, counsel was presumptively aware of what she or her partner filed with the court, and the question of whether the Petitioner had been at 8174 Traverse Street came up twice during the prosecutor's cross-examination of the Petitioner's alibi witnesses. Yet, counsel did not follow up with re-direct on that issue. Nor did the Petitioner, having notice that the discrepancy in his notice of alibi was an issue, avail himself of the opportunity testify before he rested his case.

---

³

 In *Neuman v. Rivers*, 125 F.3d 315, 319 (6th Cir. 1997), the court suggested in dicta that unlike the situation in *Jones*, there might be "some merit to Neuman's argument that, because there had been no rebuttal witnesses, no closing arguments, and no instructions to the jury, the prosecution would not have suffered prejudice had Neuman been allowed to testify." (Ultimately, the Sixth Circuit sidestepped the *Rock/Jones* issue, finding that Neuman had waived his right to testify). The Petitioner's case is more akin to *Jones* in that here, the prosecutor had already presented a rebuttal case when Petitioner made his request. As the trial prosecutor put it, "...I mean, the reason, obviously, that alibi notices are filed is to put the People on notice, and it's not really fair to the People. I presented my rebuttal. Now he gets to do a surrebuttal to explain his Alibi Notice? Do I then get to do a sur-sur-rebuttal?" Tr. 6-22-04, 119.

The trial judge and the Court of Appeals struck an appropriate balance between the Petitioner's right to testify and the discretion vested in the courts to enforce evidentiary and procedural rules. Under the facts of this case, the application of those rules was not "arbitrary or disproportionate to the purposes they are designed to serve." *Rock*, 483 U.S. at 55-56. That I or some other judge might have exercised discretion differently is beside the point. Because Petitioner has failed to show that the Michigan courts unreasonably applied the Supreme Court's decision in *Rock v. Arkansas*, or for that matter, any other Supreme Court decision, a writ of habeas corpus must be denied.

Finally, even if there were constitutional error in the denial of Petitioner's request to testify, any such error was harmless.[4] The Michigan Court of Appeals found that any error would be harmless beyond a reasonable doubt, applying the direct review test of *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). On habeas review, however, the standard for showing that an error was not harmless is more stringent, and the petitioner must establish that the error "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); *Fry v.* Pliler, 551U.S. 112, 127 S.Ct. 2321, 168 L.Ed.2d 16 (2007);

---

[4] Petitioner's claim of structural error was rejected by the Sixth Circuit in *Solomon v. Curtis*, 21 Fed.Appx. 360, 2001 WL 1216995, *3 (6th Cir. 2001), *citing Rose v. Clark*, 478 U.S. 570, 579, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986)), which held that a claim of denial of the right to testify is subject to harmless error analysis. *See also Skeens v. Haskins*, 4 Fed.Appx. 236, 2001 WL 128432 (6th Cir. 2001), citing *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991), *Ortega v. O'Leary*, 843 F.2d 258, 260-63, and *Wright v. Estelle*, 549 F.2d 971, 974 (5th Cir. 1977).

*Vasquez v. Jones*, 496 F.3d 564, 575 (6th Cir. 2007)[5]

The evidence against the Petitioner was strong. While the Petitioner fairly attacked the accuracy Mr. Berry's identification of an individual who was wearing a mask, there was a great deal of corroboration. Mr. Berry had the opportunity to observe the robber for an extended period of time in a well-lighted room. He noted the Petitioner's distinctive eyes, and stated that he recognized the individual as having been in his store on three previous occasions. He recognized the Petitioner's build, including his height, weight, and broad shoulders. He described the robber's clothing, which was identical to the clothing the Petitioner wore when he was arrested only on Alcoy Street, only four blocks from the store, approximately one-half hour after the robbery. Mr. Berry testified that the robber put approximately $170 in the pocket of his jogging suit. The police seized $167, in small bills, from the pocket of the Petitioner's jogging suit.

In addition, there were inconsistencies in the testimony of the Petitioner's alibi witnesses. His girlfriend, Ms. Sears, testified that when the Petitioner returned from the store, he came into the house and never left again. She said nothing about Mr. Weathers, the Petitioner's friend. Mr. Weathers, on the other hand, testified that Petitioner did not go into

---

[5] Prior to the Supreme Court's decision in *Fry*, the Sixth Circuit had held that where, as in this case, the state court undertook a *Chapman* harmless error analysis, the AEDPA replaced *Brecht* with an inquiry as to whether the state's conclusion regarding harmless error was itself unreasonable. *Eddleman v. McKee*, 471 F.3d 576, 583 (6th Cir. 2006). This test was phrased as "*Chapman* plus AEDPA deference." *Id.* In *Vasquez*, the Sixth Circuit recognized that *Fry* overruled *Eddleman*, and that the harmless error test in all habeas cases is the "substantial and injurious effect" standard of *Brecht*.

the house, but stayed on the enclosed porch with him.

Given the strength of the prosecutor's proofs, the fact that the Petitioner was not permitted to testify about the discrepancy in the alibi notice could not have had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht, supra.* Indeed, in 20 pages of closing argument (Tr.6-22-04, 126-145), the prosecutor spent the bulk of her time discussing the above facts. Her argument regarding the alibi notice totaled approximately one page. *Id.* 140-41.[6] The jury returned a guilty verdict after only an hour or so of deliberation.

For these reasons, the writ must be denied.

### B.  Pretrial Identification Procedures

Petitioner argued in the Court of Appeals, and argues here, that when he was in custody at the precinct station, the police erred by conducting a photographic showup rather than a live lineup. As the Court of appeals explained, under Michigan law "identification by photographic showup should not be made unless a legitimate reasons for doing so exists." (Citing *People v. Kurylczyk*, 443 Mich. 289, 298, 505 N.W.2d 528 (1993)). However, errors of state law are not cognizable on habeas review. *Estelle v. McGuire*, 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). There is no federal constitutional right to a live lineup.

---

[6] During her own closing argument, Petitioner's counsel slipped in the statement that "[m]y partner made a mistake when she filed her notice." The prosecutor's objection was sustained, and the jury was instructed to disregard the remark. Tr. 6-22-04, 149-51.

-14-

*Branch v. Estelle*, 631 F.2d 1229, 1234 (5th Cir. 1980) ("While we agree that a corporeal line-up is the most reliable identification procedure and for that reason the most preferable, the law is settled that a defendant has no Constitutional right to a line-up."). Therefore, the mere fact that a photographic showup preceded the lineup cannot form the basis of a writ.[7]

The only constitutional identification issue properly before the Court is whether the Petitioner's due process rights were violated by an unduly suggestive pretrial identification procedure that impermissibly tainted Mr. Berry's in-court identification. A conviction based on identification testimony following pretrial identification violates due process when the pretrial identification procedure is so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). In *Cornwell v. Bradshaw*, 559 F.3d 398, 413 (6th Cir. 2009), the Sixth Circuit described a two-part analysis to determine the admissibility of identification testimony:

> "In determining whether an identification is admissible, this court follows a two part analysis. The court first considers whether the procedure was unduly suggestive. *Wilson v. Mitchell,* 250 F.3d 388, 397 (6th Cir.2001); *Ledbetter v. Edwards,* 35 F.3d 1062, 1070-71 (6th Cir.1994). The court must decide if the procedure itself steered the witness to one suspect or another, independent of the witness's honest recollection. *Wilson,* 250 F.3d at 397. 'The defendant bears the burden of proving this element.' *Ledbetter,* 35 F.3d at 1071 (citation omitted). If the procedure was suggestive, the court then determines whether, under the totality of the circumstances, the identification was nonetheless reliable and therefore admissible. *Wilson,* 250 F.3d at 397 (citation omitted); *Ledbetter,* 35 F.3d at 1071."

---

[7] In any event, both the trial court and the Court of Appeals found legitimate reasons for the police to conduct a photographic rather than a corporeal lineup.

The Court of Appeals found that there was nothing suggestive about either the photographic or the live lineup:

> "In addition, there was nothing about the other participants in the photographic and corporeal lineups that rendered Gray 'substantially distinguishable.' Gray, in fact, does not dispute that he did not stand out in terms of complexion, height, weight, and approximate age at the lineups. Therefore, when viewing the totality of the circumstances, we find that the challenged pretrial identification procedure was not unduly suggestive, and thus, the trial court did not clearly err in admitting the identification evidence.
>
> "Gray maintains, however, that the photographic lineup was unduly suggestive with respect to the corporeal lineup because he was the only common participant in both lineups. The fact that Gray was the only common participant in both lineups does not make the second lineup suggestive or prejudicial. As discussed above, Gray was identified in the photographic and corporeal lineups, both of which were properly conducted."

The Court of Appeals was correct. The question of whether a pretrial identification procedure is unduly suggestive is answered in view of the totality of the circumstances. *Simmons v. United States, supra*. That a suspect might be the only common participant in both a photographic and a corporeal lineup is not unusual, and while it might be *one* factor in the totality of circumstances, Petitioner has not shown that standing alone, it is the dispositive factor in an otherwise properly conducted lineup.

Further, even if the pretrial identification procedure were considered to be suggestive, Mr. Berry's identification was otherwise reliable under the totality of the circumstances. In *Neil v. Biggers,* 409 U.S. 188, 198-99, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the Supreme Court listed five factors that should be considered when evaluating reliability: (1) the

witness's opportunity to view the perpetrator during the crime; (2) the witness's degree of attention during the crime; (3) the accuracy of the witness's prior description of the perpetrator; (4) the witness's level of certainty when identifying the defendant at the confrontation; and (5) the length of time that has elapsed between the crime and the confrontation. *See also United States v. Crozier*, 259 F.3d 503, 510 (6th Cir. 2001). The record is abundantly clear that all five factors have been satisfied:

(1) Mr. Berry testified that he had around five minutes to view the robber close up, in bright light.

(2) Mr. Berry said that at times, the robber was mere inches from his face, and his testimony shows him to have been very attentive to details about the individual's eyes, body type and clothing.

(3) The description that Mr. Berry gave the police on the scene, both as to the robber's physical appearance and his clothing, was very accurate with respect to the Petitioner's appearance and the clothing he was wearing when he was arrested.

(4) As to the level of certainty, Mr. Berry testified that he was "one hundred percent certain" that Petitioner was the man who robbed him. He also testified that he had seen the Petitioner in his store on previous occasions.

(5) The photographic showup was conducted the day after the robbery. The live lineup occurred two weeks after the robbery.

The decision of the Court of Appeals was well-reasoned and factually supported by the record. The Michigan courts did not unreasonably apply *Simmons v. United States, Neal*

*v. Biggers*, or any other Supreme Court case.  Petitioner is not entitled to a writ of habeas corpus on these grounds.

### C.  Illegal Search and Seizure

Petitioner claims that because there was no probable cause to arrest him, the seizure of the evidence, i.e. the $167 taken from his person, violated the Fourth Amendment, and the evidence should have been suppressed.

The Court of Appeals stated, "Because Gray did not file a pretrial motion to suppress the money obtained during the warrantless search, this issue has not been properly preserved."  In his reply brief [Docket #6], the Petitioner concedes that this issue has been procedurally defaulted because it was not raised in the trial court.  Therefore, the issue cannot be considered by this Court.  *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

Even apart from the procedural default, Petitioner's Fourth Amendment issue is not cognizable on federal habeas review.  In *Stone v. Powell,* 428 U.S. 465, 481-82,  96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  A state criminal defendant has a full and fair opportunity to litigate his Fourth Amendment claim when (1) the state's procedural mechanism allows the opportunity to present a Fourth Amendment claim; and (2) the defendant's presentation of his claim was not "in fact frustrated because of a failure of

that mechanism." *Riley v. Gray,* 674 F.2d 522, 526 (6th Cir.1982). In Michigan, a motion to suppress evidence may be raised before trial, during trial, or on appeal. *See People v. Ferguson,* 376 Mich. 90, 93-95, 135 N.W.2d 357 (1965); *People v. Harris,* 95 Mich.App. 507, 509, 291 N.W.2d 97 (1980). In this case, nothing would have prevented Petitioner from filing a pretrial motion to suppress, and the Court of Appeals did address the merits of his Fourth Amendment claim, albeit under a plain error standard. "All that *Stone v. Powell* requires is an 'opportunity' for full and fair consideration of the claim for suppression; it is up to the claimant and his counsel to decide what use, if any, is to be made of the opportunity." *Jennings v. Rees,* 800 F.2d 72, 77 (6th Cir.1986). There is nothing in this record to suggest that Petitioner's presentation of his Fourth Amendment claim was frustrated because of any failure of the state court mechanism.

## V. CONCLUSION

I therefore recommend that Petitioner Terence Darryl Gray's Petition for Writ of Habeas Corpus be DENIED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof, including weekends and intervening holidays, as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections

a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, including weekends and intervening holidays, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

        S/R. Steven Whalen
        R. STEVEN WHALEN
        UNITED STATES MAGISTRATE JUDGE

Dated: February 1, 2010

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on February 1, 2010.

        s/Susan Jefferson
        Case Manager